UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:04CV-129-R

LARITA BUTTS                                                    PLAINTIFF

v.

CITY OF BOWLING GREEN, ET AL.                                  DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion for Summary Judgment (Dkt. # 11).

Plaintiff has responded (Dkt. # 19).  Defendants have replied (Dkt. # 24).  Plaintiff has sur-replied

(Dkt. # 25).  The matter is now ripe for adjudication.  For the reasons that follow, Defendants'

Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Ms. Larita Butts filed this 42 U.S.C. § 1983 action against the City of Bowling Green ("the

City") and Detective Barry Raley because she claims that her Fourth Amendment right to be free

from an arrest without probable cause was violated.  She was arrested on July 16, 2003 for hindering

apprehension in the second degree in violation of Ky. Rev. Stat. § 520.130.  The criminal complaint

used to secure an arrest warrant states that on July 15, 2003, Ms. Butts

> [u]nlawfully and intentionally rendered assistance to Corey Butts (who is being
> sought on a warrant for Rape 1st degree) by providing him with transportation to an
> unknown location.  The defendant knew that BGPD was attempting to locate and
> arrest Corey Butts for Rape 1st degree.  All in violation of KRS 520.130 hindering
> apprehension second degree.

Corey Butts is Ms. Butts's son. Detective Raley filed the criminal complaint and secured an arrest

warrant from a Warren County District Judge.  On October 16, 2003, Ms. Butts entered into a

pretrial diversion agreement where the criminal charges would be dismissed if she did not have any

1

additional charges during a specified period of time.

Ms. Butts, who is an African American woman, was 49 years old at the time of her arrest. She is the mother of five children including Corey Butts. In April 2001, Mr. Butts was arrested at motel for sexual assault. Ms. Butts went to the motel and met Detective Raley for the first time. Ms. Butts alleges that upon learning that Corey Butts was married to a Caucasian woman, Detective Raley told Ms. Butts that "blacks and whites should not be together." Further, she alleges that Detective Raley told her that he didn't like her and "if you open your mouth, I will arrest you."[1] Also after Detective Raley arrested her and took her to the station in this case, she claims that another uniformed officer asked Detective Raley if he was using her for "bait" and he said yes.

## STANDARD

A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" in a summary judgment inquiry only when they could affect the case's outcome under the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Stated differently, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Furthermore, an issue of material fact is "genuine" only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the

---

[1] Additionally, in her citizen complaint form attached to her complaint (Dkt. #1), Ms. Butts alleges that Detective Raley told her sister that "he would send all niggers back to Africa."

plaintiff." *Id*. at 252.  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)."  *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

### A.    *Heck v. Humphrey*

Prior criminal proceedings must be terminated in favor of the accused before a § 1983 malicious prosecution is actionable.  *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).  In other § 1983 actions, this court must consider whether a judgment in favor of plaintiff on her § 1983 claims would imply that her criminal conviction was invalid.  *Id*. at 487.  Ms. Butts argues that she is not alleging a malicious prosecution cause of action; therefore, the favorable termination requirement does not apply.

Defendants have read into the holding in *Heck* a favorable termination requirement for actions other than malicious prosecution. Defendants argue that Ms. Butts is not entitled to maintain this action because a pretrial diversion is not a favorable termination. It is true that in malicious prosecution actions, favorable termination is an element, *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981), and some courts have stated that pre-trial diversion was not a favorable termination for malicious prosecution purposes. *See Cissell v. Hanover Ins. Co.*, 647 F. Supp. 757, 758 (E.D. Ky. 1986) (federal pre-trial diversion is not a favorable termination); *Broaddus v. Campbell*, 911 S.W.2d 281, 284 (Ky. Ct. App. 1995) (when the defendant enters into an agreement to have the charges dismissed it is not a favorable termination).  However, this is not a malicious prosecution action.

3

The *Heck* court specifically states that it is using the elements of malicious prosecution because it is the closest analogy to the type of claims before it. *Heck*, 512 U.S. at 484. *See also Harden v. Pataki*, 320 F.3d 1289, 1299-1300 (11th Cir. 2003) (discussing whether extradition is analogous to a malicious prosecution action warranting an application of the malicious prosecution elements, but deciding that *Heck* should be read to require that the underlying judgment be invalidated, expunged or reversed). Further, the Court distinguishes false arrest or imprisonment claims from malicious prosecution claims by stating that unlike false arrest claimants, malicious prosecution claimants are entitled to recover for confinement imposed pursuant to legal process. *Heck*, 512 U.S. at 484. Here Ms. Butts is making a claim analogous to false arrest because she is claiming that she was arrested pursuant to an invalid arrest warrant.  She is not making a malicious prosecution argument because she was never tried for the charge against her.

Even though it seems unnecessary because this is a claim analogous to false arrest where Ms. Butts has not been convicted and Ms. Butts is not trying to recover for an unconstitutional conviction, this court will still attempt to apply the holding in *Heck*. The *Heck* court held "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 484. First, Ms. Butts has not been convicted or sentenced. Under Kentucky law, a conviction is

> the ascertainment of defendant's guilt by some legal mode and an adjudication that the accused is guilty. This may be accomplished by a confession by the accused in

> open court, a plea of guilty or a verdict which ascertains and publishes the fact of guilt. We believe in the majority of those cases and in the majority of jurisdictions (although we have not counted noses), the word "conviction" is not limited to a final judgment.

*Cook v. Commonwealth*, 129 S.W.3d 351, 364-65 (Ky. 2004). Further, Kentucky Revised Statutes § 533.258 (1) states "[i]f the defendant successfully completes the provisions of the pretrial diversion agreement, the charges against the defendant shall be listed as 'dismissed-diverted' and shall not constitute a criminal conviction.[2]" Similarly, under Kentucky rules, all charges against her have been dismissed because she was not charged with any other crimes during the period of time set forth in the pre-trial agreement. *See* Ky. R. Crim. Pro. 8.04. Ms. Butts does not have a criminal conviction. Therefore, this action could not invalidate a sentence or conviction that she does not have. *See Jenkins v. Haubert*, 179 F.3d 19, 26 (2d Cir. 1999) ("[W]here federal habeas corpus is not available to address constitutional wrongs, § 1983 must be."(federal habeas corpus would not be available here because she has not been convicted)); *Schamaeizadeh v. Cunigan*, 182 F.3d 391, 397 (6th Cir. 1999) (stating that *Heck* did not apply because the plaintiff was not a prisoner and had not been convicted so he never had a claim for habeas corpus relief).

Even if Ms. Butts had a conviction, she would still be able to bring a Fourth Amendment

---

[2]In her brief, Ms. Butts explains in great detail that the Kentucky Revised Statutes apply to pre-trial diversions in circuit court but that only Ky. R. Crim. Pro. 8.04 applies in district court. This type of discussion is omitted from this opinion because it would only be relevant if this was a malicious prosecution action where one element of the cause of action is "terminate in favor of the accused." As discussed previously, for any other § 1983 action, the holding of *Heck* applies--that is a cause of action cannot impugn a conviction. This court finds no reason not to believe that if a pretrial diversion in a circuit court, where the defendant must plead guilty first, is not a criminal conviction, then a district court pretrial diversion, where the defendant does not have to plead guilty, is also not a criminal conviction. *See* Ky. Rev. Stat. § 533.250(1)(e) and Local Rule 605.

claim if it did not necessarily imply that her conviction was unlawful and her injury was something other than the "injury of being convicted and imprisoned." *Heck*, 512 U.S. at 487, n.7. *See Baranski v. Fifteen Unknown Agents of Bureau of Alcohol,* 401 F.3d 419, 434-35 (6th Cir. 2005) (a finding that the search was illegal would not imply that his conviction for conspiracy was invalid but would be in direct contravention of a forfeiture order); *Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998) ("[A] claim based on an unlawful search or arrest may be brought immediately, because a violation of the fourth amendment does not necessarily impugn the validity of a conviction--the evidence may be properly admitted anyway, or it may be excluded and the defendant convicted on other evidence.").  *Heck* does not bar Ms. Butts's claim because Ms. Butts does not have a conviction.  Further, while some Fourth Amendment cases may be barred by *Heck*,  her Fourth Amendment claim for an invalid arrest warrant would not impugn the validity of a conviction, even if she had a conviction.

Ms. Butts is making two claims that do not now implicate her guilt or innocence: 1) the warrant was conclusory and 2) Detective Raley misled the judge into believing the affidavit was made on his own personal knowledge.  If Ms. Butts had been convicted and now was only making a claim that Detective Raley testified falsely in the arrest warrant because she did not commit the crime, her conviction would be impugned. Likewise, if Ms. Butts had been convicted only on Detective Raley's testimony at trial that she transported her son to another location, then this action would call Ms. Butts's conviction into question.  Because Detective Raley could have testified at trial to the same information as in the affidavit, Ms. Butts's cause of action did not become clear until after her case was resolved because this action could have impugned a conviction based solely on Detective Raley's testimony.  *See Heck*, 512 U.S. at 487, n.7 ("For example, a suit for damages

6

attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, see *Murray v. United States*, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988), and especially harmless error, see *Arizona v. Fulminante*, 499 U.S. 279, 307-308, 111 S.Ct. 1246, 1263-1264, 113 L.Ed.2d 302 (1991), such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.")

**B.    Municipal Liability**

Ms. Butts also alleges a municipal liability claim against the City.  To establish municipal liability, the plaintiff must prove the unconstitutional actions are the result of the policy or custom of the municipality. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998)(citing *Monell*, 436 U.S. at 690-91 (1978)). Even if the policy itself was unconstitutional, the plaintiff's constitutional rights must be violated for the city to be liable.  *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 545 (6th Cir. 2003).  *See also Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005) ("When an officer violates a plaintiff's rights that are not 'clearly established,' but a city's policy was the 'moving force' behind the constitutional violation, the municipality may be liable even though the individual officer is immune."); *Ross v. Duggan*, 402 F.3d 575, 589 (6th Cir. 2004). "There must be a direct causal link between the policy and the alleged constitutional violation such that the [municipality's] deliberate conduct can be deemed the moving force behind the violation." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005).

There are five ways in which a governmental entity may be charged with an official policy or custom: (1) actions by the municipal legislative body, *Pembaur v. City of Cincinnati*, 475 U.S.

7

469, 480 (1980); (2) actions by municipal agencies or boards that exercise authority delegated by the municipal legislative body, *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 661 (1978); (3) a policy decision by an individual or entity with final decision-making authority, *Pembaur*, 475 U.S. at 483-84; (4) a policy of inadequate training or supervision, *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989); and (5) custom or usage, *Pembaur*, 475 U.S. at 481-82 n.10. *See also Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Ms. Butts's theory seems to be that the City had a custom of tolerating federal rights violations. Ms. Butts must show four things under this theory:

> (1) the existence of a clear and persistent pattern of [illegal activity];
> (2) notice or constructive notice on the part of the [defendant];
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
> (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas*, 398 F.3d at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir.1996)). A municipal policy or custom cannot be shown by one instance of misconduct. *Thomas*, 398 F.3d at 432. Ms. Butts argues that another officer asking Detective Raley if he was using Ms. Butts for bait shows that the Bowling Green Police Department had a practice of this particular tactic. At most, the question shows one instance of the alleged illegal activity,[3] but it does not rise to the level of showing a clear and persistent pattern of illegal activity. More importantly, this one incident does not show that the Bowling Green Police Department had notice of this type of alleged illegal activity.

## C.    Fourth Amendment

---

[3]This court is not making a finding that such activity is illegal or unconstitutional.

Detective Raley argues that he is entitled to qualified immunity on Ms. Butts's Fourth Amendment claim. In a qualified immunity analysis this court must make a three-step determination: "(i) 'whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;' (ii) 'whether the violation involved a clearly established constitutional right of which a reasonable person would have known;' and (iii) 'whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Radvansky*, 395 F.3d at 302.

Detective Raley argues that he is entitled to rely on a judicially secured arrest warrant. An officer is entitled to rely on a judicially secured arrest warrant unless 1) the warrant is "so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable" or 2) an officer makes false statements or omissions to the judge and but for the falsities the judge would not have issued the warrant. *Yancey v. Carroll County*, 876 F.2d 1238, 1242 (6th Cir. 1989). Further, because Detective Raley prepared the warrant, he is not entitled to argue that he reasonably relied on a judicially secured warrant. *See Groh v. Ramirez*, 540 U.S. 551, 563 (2004) ("Moreover, because petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid.")

### 1.    Whether the warrant lacked probable cause

Ms. Butts argues that the warrant was lacking in probable cause because it stated only conclusions without a basis. The Kentucky Supreme Court has addressed this issue in a case with a similar affidavit:

9

The affidavit executed by Detective Harlow in support of the arrest warrant contained only the following recitation:

> The affiant, Stan Harlow, Kentucky State Police, says that on January 17, 1995, in Hart County, Kentucky the above-named defendant unlawfully: with the intent to cause the death of another person, she caused the death of such person by killing Christina Marie Poper on Tuesday, January 17, 1995.

The criminal complaint is a printed form. The underlined portion of the affidavit represents information supplied by the affiant to fill in the blank spaces on the form.

This type of "ultimate fact" affidavit would be sufficient if based upon the personal knowledge of the affiant. *Huff v. Knauf*, 313 Ky. 660, 233 S.W.2d 276 (1950); cf. *Harvey v. Commonwealth*, 226 Ky. 36, 10 S.W.2d 471 (1928). However, if information concerning the alleged offense was obtained from someone other than the affiant, the affidavit must disclose that fact. *Whiteley v. Warden*, 401 U.S. 560, 568-69, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971); *Emberton v. Commonwealth*, Ky., 269 S.W.2d 206 (1954). The Commonwealth argues unconvincingly that the warrant must be valid, because it complies with Official Form 1 attached to the criminal rules. However, even the Attorney General has opined otherwise:

> In order for a complaint not based on the personal observation of the affiant to be sufficient to support a warrant of arrest, it must disclose (1) the name of the informant, (2) the factual observation he has made and not just the "ultimate fact" of the offense, and (3) how, when and where such observation was made.

OAG 65-275. It is not the fill-in-the-blanks form, but the information used to fill in the blanks, which rendered the criminal complaint insufficient in this case. Since the affidavit was insufficient to support a finding of probable cause, the warrant was invalid, thus provided no basis for Appellant's arrest. Ky. Const. § 10; *Whiteley v. Warden*, *supra*; *Patrick v. Commonwealth*, Ky., 238 S.W.2d 1006 (1951); *Harvey v. Commonwealth*, *supra*.

*Talbott v. Commonwealth*, 968 S.W.2d 76, 81 (Ky. 1998).  In a similar situation, a sheriff filed an affidavit for an arrest warrant stating only that "defendants did then and there unlawfully break and enter a locked and sealed building." *Whiteley*, 401 U.S. at 563.  The Supreme Court went on to find:

> The decisions of this Court concerning Fourth Amendment probable-cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with sufficient information to

10

> support an independent judgment that probable cause exists for the warrant....That
> complaint consists of nothing more than the complainant's conclusion that the
> individuals named therein perpetrated the offense described in the complaint. The
> actual basis for Sheriff Ogburn's conclusion was an informer's tip, but that fact, as
> well as every other operative fact, is omitted from the complaint. Under the case just
> cited, that document alone could not support the independent judgment of a
> disinterested magistrate.

*Id.* at 564 (internal citations omitted).  In his affidavit in support of a warrant, Detective Raley like the Detective in *Talbott* and the Sheriff *in Whiteley* only gave a conclusory statement not based on personal knowledge.  Detective Raley merely stated that Ms. Butts transported her son to another location.  Therefore, this court finds that Ms. Butts's Fourth Amendment rights were violated as the courts in both *Talbott* and *Whiteley* found.

## 2.      Whether Detective Raley testified falsely

Ms. Butts alleges that Detective Raley testified falsely on his arrest affidavit.  "It is clearly established that an arrest without probable cause violates the Fourth Amendment." *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997) (citing *Beck v. Ohio*, 379 U.S. 89, 90-91 (1964)).  "Probable cause necessary to justify an arrest is defined as 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Radvansky*, 395 F.3d at 302 (quoting *Beck,* 379 U.S. at 91).

This court will analyze the argument that Detective Raley gave a false affidavit.  "To overcome an officer's entitlement to qualified immunity, however, a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian*, 335 F.3d at 517.  The false statements are material to the finding of

probable cause if the judge would not have found probable cause without them. *Id.* at 518.

Detective Raley stated in his criminal complaint that Ms. Butts provided Corey Butts "with transportation to an unknown location.[4]" Detective Raley's statement that Ms. Butts took Corey Butts to another location is the only statement supporting probable cause in this case. Therefore, it is material. Further, while Detective Raley mentions that the county attorney's office typed the information, Detective Raley signed it.  As established both *supra* and *infra*, Detective Raley had an obligation to present the witness's testimony in his affidavit for a search warrant.  There seems to be no explanation why Detective Raley led the judge to believe it was his personal knowledge.

Detective Raley argues that he is entitled to rely on a witness's statement that Ms. Butts took Corey to another location. *See Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) ("An eyewitness identification will constitute sufficient probable cause 'unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.'").  Detective Raley does not mention a witness in his affidavit used to procure the warrant. Detective Raley now apparently claims the witness's statement formed the entire basis for his affidavit testimony that Ms. Butts transported Corey Butts to another location.  Instead, in the affidavit, he appears to be reporting from his personal knowledge not the witness's personal knowledge.[5] When an affidavit is the sole basis for the issuance of a warrant, this court must analyze

---

[4]Ms. Butts presents her own affidavit stating that "[a]t no time, and in no way, did I on July 15th or 16th, 2003, help Corey hide out from or elude the police." She also presents interrogation testimony of her sister Faye Wilson who told the police that "Jimbo" took Corey to another location.

[5]Even at this late stage, Detective Raley still has not identified the witness and the only details that he has given are that the witness claims to have seen Ms. Butts pick up Corey Butts

the sufficiency of the affidavit, on its face.  *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005). The

Supreme Court has stated:

> Under the cases of this Court, an otherwise insufficient affidavit cannot be
> rehabilitated by testimony concerning information possessed by the affiant when he
> sought the warrant but not disclosed to the issuing magistrate. See *Aguilar v. Texas*,
> 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723. A contrary rule would,
> of course, render the warrant requirements of the Fourth Amendment meaningless.

*Whiteley v. Warden*, 401 U.S. 560, 565, n.8 (1971). *See also Owens ex rel. Owens v. Lott*, 372 F.3d

267, 277-78 (4th Cir. 2004).

At best, a factual dispute now exists as to whether there was a witness, Detective Raley did

not tell the magistrate about the witness, but now claims there was one.  Detective Raley has not

given the witness's name, a statement about how he knew the witness, any facts about whether the

witness was reliable, or an affidavit from the witness.  Instead, in Detective Raley's affidavit, he

gave few facts about the witness and adopted a section of the motion for summary judgment, which

included both fact and argument.

### 3.     Whether reasonable officer would have acted as Detective Raley did in light of clearly established law.

Having found that constitutional violations occurred, on both the conclusory affidavit theory

and on the misled magistrate theory, this court must consider the remainder of the qualified

immunity analysis: whether the constitutional violation was clearly established and whether, in light

of the clearly established law, Detective Raley's actions were unreasonable. *Radvansky*, 395 F.3d

at 302. Another panel of the Sixth Circuit has combined these two parts stating: "the second step is

to determine whether the right is so 'clearly established' that a 'reasonable official' would understand

---

at 9 or 9:30 pm from a mobile home park.

that what he is doing violates that right." *Cooper v. Parrish*, 203 F.3d 937, 951  (6th Cir. 2000).

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  The Supreme Court has clearly set forth the probable cause requirements for warrants and the duties of the magistrate in issuing warrants:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States*, *supra*, 362 U.S., at 271, 80 S.Ct., at 736....

> Our earlier cases illustrate the limits beyond which a magistrate may not venture in issuing a warrant. A sworn statement of an affiant that "he has cause to suspect and does believe that" liquor illegally brought into the United States is located on certain premises will not do.  *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in *Nathanson* failed to meet this requirement. An officer's statement that "affiants have received reliable information from a credible person and believe" that heroin is stored in a home, is likewise inadequate. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). As in *Nathanson*, this is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued....

> The essential protection of the warrant requirement of the Fourth Amendment, as stated in *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), is in "requiring that [the usual inferences which reasonable men draw from evidence] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Id.*, at 13-14, 68 S.Ct., at 369....

> Our decisions applying the totality-of-the-circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's

14

> tip by independent police work. In *Jones v. United States*, *supra*, 362 U.S., at 269, 80 S.Ct., at 735, we held that an affidavit relying on hearsay "is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented."

*Illinois v. Gates*, 462 U.S. 213, 238-42 (1983).  From *Gates,* it is clearly established that a police officer is required to give information about the witness and his or her statement along with any corroborating information to the magistrate judge so that the magistrate may make a neutral and detached decision on whether probable cause exists based on the veracity and basis of knowledge of the witness along with any independent police corroboration. *Id*.   "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005). It is apparent from *Gates*, *Talbott, supra*, and *Whiteley*, *supra,* that an officer must give information about the witness to the magistrate so that she can make a neutral and independent determination. Further, a bare bones or conclusory affidavit is not sufficient to establish probable cause.

In *Malley v. Briggs*, 475 U.S. 335 (1986), the Supreme Court stated when qualified immunity is inappropriate:

> Accordingly, we hold that the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon*, *supra*, defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, *Leon*, *supra*, at 923, 104 S.Ct., at 3421, will the shield of immunity be lost.

*Id*. at 344-45. *See also Groh*, 540 U.S. at 565 (quoting *Malley v. Briggs*, 475 U.S. 335, 344, 106 S. Ct. 1092 (1986)) ("Although both *Sheppard* and *Leon* involved the application of the 'good faith' exception to the Fourth Amendment's general exclusionary rule, we have explained that 'the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon*

defines the qualified immunity accorded an officer.'"").  The Supreme Court went on to explain what this court should ask to determine whether the officer's actions were reasonable:

> The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.

*Malley*, 475 U.S. at 345-46.  *See also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")

In this case, Detective Raley has given a bare-bones, conclusory affidavit.  A bare-bones, conclusory affidavit does not establish probable cause and any reasonably trained officer should have known that he would have to give information about the witness to the crime.   It is unreasonable for Detective Raley not to present all of the facts to the judge so that the judge can make a neutral and independent determination of probable cause.  This court cannot decide the qualified immunity issue under Ms. Butts's theory that Detective Raley misled the magistrate judge because a material factual dispute concerning the witness exists.  Likewise, any reasonable officer would have known that additional information about he reliability of the witness was required to establish probable cause.  That law was clearly established.

**D.     Statute of Limitations**

Defendants argue that the statute of limiations began to run at the time of the arrest. In *Schamaeizadeh,* the Sixth Circuit Court of Appeals stated that a Fourth Amendment claim did not

accrue until the Plaintiff's criminal charges were dismissed. *Schamaeizadeh,* 182 F.3d at 397. *See also Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 857 (6th Cir. 2003) (finding the statute of limitations began to run when the charges were dismissed).  "Indeed, the statute of limitations does not even begin to run for criminal defendants seeking to file § 1983 claims until the disposition of any pending criminal proceedings." *Summers v. Leis,* 368 F.3d 881, 891-92 (6th Cir. 2004) (Batchelder, J., concurring in judgment).  *See also Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001).  *Cf. Hodge v. City of Elyria*, 2005 Fed.App. 0169N (6th Cir. 2005) (stating that excessive force claims begin to run at the time of the arrest because the holding in *Heck* does not bar excessive force claims in contrast to the situation in *Shamaeizadeh* where a conviction may bar a Fourth or Fourteenth Amendment claim). Reading these cases together, the rule appears to be that if there is a possibility that the claim could impugn the conviction, such as certain Fourth Amendment claims, then the statute of limitations does not begin to run until the conclusion of the criminal proceedings. Because there was a possibility that *Heck* could bar certain Fourth Amendment claims and this is one of those Fourth Amendment claims, as discussed above, the statute of limitations did not begin to run at least until she signed the pretrial diversion agreement on October 16, 2003.[6] *See also* Dkt. # 6.  Until October 16, 2003, it was possible that Ms. Butts's Fourth Amendment claims could have been barred by *Heck*. *See* discussion above in the *Heck v. Humphrey* section. Therefore, Ms. Butts filed this action in August 2004 before the statute of limitations had run.

## CONCLUSION

The Motion for Summary Judgment (Dkt. # 11) is **GRANTED in part** for the reasons set

---

[6]This court does not decide whether the time runs from the pretrial agreement or when the case was ultimately dismissed a year later.

forth herein and **DENIED in part**.  The claims against the City of Bowling Green are dismissed.

Detective Raley is not entitled to qualified immunity on Ms. Butts's claim of Fourth Amendment

violation.


cc: Counsel